**FILED**
CLERK, U.S. DISTRICT COURT

9/30/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____DTA_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>LIZETTE BERRIOS LATHON,<br><br>          Defendant. | ED CR No. 5:22-cr-00229-FMO<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 1349: Conspiracy to Commit Mail and Wire Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 1349]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.   Defendant LIZETTE BERRIOS LATHON was a resident of Moreno Valley, California.

2.   Beginning no later than 2014, and continuing to the present, defendant LATHON operated at least three businesses involved in providing tax preparation services to the public: Miracle Tax

Services, Hardcore Corporation (doing business as "Hardcore Taxes"), and Lathon LLC (doing business as "LL Taxes"). Individuals seeking tax preparation services from defendant LATHON provided her with their personal identifying information ("PII"), including their names, dates of birth, and social security numbers.

3. California's Employment Development Department ("EDD") was the administrator of the unemployment insurance ("UI") benefit program for the State of California.

4. On March 13, 2020, the President of the United States declared COVID-19 an emergency under the Robert T. Stafford Disaster Relief and Emergency Assistance Act. As a result, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which the President signed into law on March 27, 2020. The CARES Act provided over $2 trillion in economic relief protections to the American people from the public health and economic impacts of COVID-19.

5. Prior to the enactment of the CARES Act, to be eligible for UI administered by EDD, a person had to have been employed and worked in California and received at least a certain amount of wages from an employer in the 18 months preceding his/her UI benefits claim. Because of this requirement, self-employed workers, independent contractors, and employees with insufficient earnings were not eligible to receive regular UI benefits.

6. The CARES Act established a new program – Pandemic Unemployment Assistance ("PUA") -- to provide unemployment benefits during the COVID-19 pandemic to people who did not qualify for regular unemployment insurance benefits, including business owners, self-employed workers, independent contractors, and those with

limited work history who were out of business or had significantly reduced their services as a direct result of the pandemic. UI benefits provided under the PUA program were sometimes referred to as PUA benefits.

7. Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker could qualify for PUA benefits administered by EDD if he/she previously performed such work in California and was unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19-related reason.

8. Persons applying for PUA benefits did not need to submit any supporting documents to EDD with their applications. Claimants entered their total income for the 2019 calendar year on the application. The stated income was used to pay the minimum benefits of $167 per week. EDD could request documentation to provide proof of the stated income.

9. A PUA claimant was required to answer various questions to establish his/her eligibility for PUA benefits. The claimant was required to provide his/her name, social security number, and mailing address. The claimant was also required to identify a qualifying occupational status and COVID-19 related reason for being out of work.

10. After it accepted a UI claim, including a claim submitted pursuant to the PUA program, EDD typically deposited UI funds every two weeks to an Electronic Benefit Payment ("EBP") debit card administered by Bank of America ("BofA"), which the claimant could use to pay for his/her expenses. The EBP debit card was mailed via

the United States Postal Service to the claimant at the address the claimant provided in his/her UI application.

B. THE OBJECTS OF THE CONSPIRACY

Beginning no later than on or about February 2, 2020, and continuing through at least on or about March 23, 2021, in Riverside County within the Central District of California, and elsewhere, defendant LATHON and her spouse, Co-conspirator 1, together with others known and unknown to the United States Attorney, knowingly and with intent to defraud, conspired to commit offenses against the United States, namely, mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343.

C. THE MANNER AND MEANS OF THE CONSPIRACY

11. The objects of the conspiracy were carried out, and were to be carried out, in substance, as follows:

   a. Defendant LATHON filed and caused the filing with EDD of fraudulent applications for UI benefits that falsely asserted the named claimants were self-employed independent contractors who had been negatively affected by the COVID-19 pandemic, thereby triggering eligibility for UI benefits under the PUA provision of the CARES Act. In some instances, defendant LATHON submitted fraudulent applications for UI benefits using names, social security numbers and dates of birth that she obtained from former clients of her tax preparation businesses without the permission of those former clients. Defendant LATHON also submitted for filing UI applications using third parties' names, dates of birth, and social security numbers. In all instances, defendant LATHON submitted the applications using others' PII intending to secure the benefits for herself and her family by

4

1  having the EBP debit cards mailed to addresses she and her family,
2  including Co-conspirator 1, controlled.
3        b.    In some instances, defendant LATHON falsely asserted
4  and caused to be asserted on the UI applications submitted in
5  furtherance of the conspiracy that the claimants were residents of
6  California entitled to UI benefits administered by EDD when, in fact,
7  they were not, and defendant LATHON knew they were not.
8        c.    In some instances, defendant LATHON falsely asserted
9  and caused to be asserted inflated income for the named claimants on
10 their applications in order to receive the maximum benefit amount.
11        d.    In some instances, defendant LATHON made up and caused
12 to be made up the occupation that was listed for the named claimant
13 on the application.
14        e.    To the contrary, and as defendant LATHON then well
15 knew, many of the persons named as claimants on the applications that
16 defendant LATHON filed and caused to be filed had no residential
17 history in the State of California and/or had not been employed in
18 the occupations that defendant LATHON reported and caused to be
19 reported on the UI benefits applications she submitted and caused to
20 be submitted in the names of the named claimants.
21        f.    By falsely asserting that the claimants had worked in
22 the State of California as independent contractors who had lost work
23 because of COVID-19, defendant LATHON falsely represented and caused
24 to be falsely represented that the named claimants were entitled to
25 UI benefits administered by EDD when, as defendant LATHON then knew,
26 they were not.
27        g.    As a result of the fraudulent UI benefit claims that
28 defendant LATHON filed and caused to be filed, EDD authorized BofA to

issue EBP debit cards in the names of the named claimants. Defendant LATHON knew that the applications she submitted would cause BofA to mail EBP debit cards issued to the named claimants via the United States Postal Service to the addresses defendant LATHON provided on the fraudulent UI claim applications, including addresses that defendant LATHON and her co-conspirators controlled.

      h.    Defendant LATHON and Co-conspirator 1 would use the EBP debit cards, or direct others to use the EBP debit cards, to make cash withdrawals at automated teller machines ("ATMs") and to make purchases at retail stores, both types of transactions involved wire communication in interstate commerce.

      i.    Through this conspiracy, defendant LATHON and Co-conspirator 1 caused at least 44 fraudulent PUA claims to be filed, resulting in losses to EDD and the United States Treasury of approximately $998,630.

D.    <u>OVERT ACTS</u>

    12.    In furtherance of the conspiracy and to accomplish its objects, defendant LATHON and Co-conspirator 1, and other co-conspirators known and unknown to the United States Attorney, committed, and willfully caused others to commit, various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

    <u>Overt Act No. 1</u>:    On June 29, 2020, defendant LATHON used the EBP debit card held in victim M.C.'s name to withdraw $1,000 from an ATM in Moreno, California.

    <u>Overt Act No. 2</u>:    On August 31, 2020, defendant LATHON used the EBP debit card held in victim O.O.'s name to withdraw $1,000 from an ATM in Moreno Valley, California.

6

Overt Act No. 3:    On September 7, 2020, defendant LATHON and Co-conspirator 1 used the EBP debit cards held in the names of victims L.L. and D.P. to withdraw $2,000 from an ATM in Upland, California.

Overt Act No. 4:    On March 23, 2021, defendant LATHON possessed handwritten notes containing victim A.F.'s name, date of birth, and social security number, and an e-mail address containing A.F.'s name.

COUNT TWO

[18 U.S.C. § 1028A(a)(1)]

On or about August 5, 2020, in Riverside County, within the Central District of California, defendant LIZETTE BERRIOS LATHON knowingly possessed and used, without lawful authority, means of identification that defendant LATHON knew belonged to another person, namely, the name and social security number of victim M.Q., during and in relation to the offense of Conspiracy to Commit Mail Fraud and Wire Fraud, a felony in violation of Title 18, United States Code, Section 1349, as charged in Count One of this Information.

COUNT THREE

[18 U.S.C. § 1341]

A. INTRODUCTORY ALLEGATIONS

1. At all times relevant to this Information, defendant LIZETTE BERRIOS LATHON was a resident of Riverside County, California, within the Central District of California.

2. Defendant LATHON was employed as a Service/Train Attendant for the National Railroad Passenger Corporation, also known as Amtrak, from 2000 to 2021.

3. Defendant LATHON controlled a prepaid Visa RushCard administered by Green Dot Corporation ending in 8801.

4. The Railroad Retirement Board ("RRB") was an independent federal agency that administers comprehensive disability, retirement-survivor, and unemployment-sickness insurance benefits programs for United States' railroad workers and their families.

5. As an employee of a covered railroad, defendant LATHON was eligible for benefits from RRB.

6. To receive sickness benefits, employees were required to complete and file a Form SI-1a Application for Sickness Benefits within 10 days from the first day benefits are claimed.

7. Employees also were required to submit a Form SI-1b Statement of Sickness, completed by a licensed physician, describing the sickness and including a return-to-work date for the employee.

8. To continue to receive sickness benefits after a 14-day claim period, employees were required to submit a form SI-3 Claim for Sickness Benefits every two weeks. The SI-3 Claim for Sickness Benefits could be submitted online on RRB's website.

9.      Employees were also required to submit a Form SI-7 Supplemental Doctor's Statement updating RRB on the employee's condition and providing information on when the employee can return to work.  The SI-7 Supplemental Doctor's Statements were required to continue receiving benefit payments.  A physician completed the Form 2I-7 Supplemental Doctor's Statement, which was used to determine if employee was still eligible to receive the sickness benefits due to persisting health condition.

B.      THE SCHEME TO DEFRAUD

10.     Beginning no later than September 17, 2014, and continuing until January 6, 2020, in Riverside County, within the Central District of California, and elsewhere, defendant LATHON, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the RRB by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

11.     The fraudulent scheme operated, in substance, in the following manner:

  a.      Defendant LATHON would visit a medical professional, complaining of pain or anxiety.

  b.      Defendant LATHON would obtain documentation from the medical professional, or that person's office relating to her initial visit.

  c.      Defendant LATHON would submit a Form SI-1a Application for Sickness Benefits relating to her initial visit to the medical professional.

  d.      Defendant LATHON would obtain and file forged and materially false forms SI-3 Claim for Sickness Benefits and false

forms SI-7 Supplement Doctor's Statement, falsely representing that she had been seen by a medical professional, falsely representing that the medical professional had signed the forms, and falsely representing that the medical professional had provided a new return to work date for defendant LATHON, thereby extending the period of time she would receive RRB sickness benefits.

   e. As a result of defendant LATHON's misrepresentations, RRB, through the United States Treasury, made electronic transfers of funds, which constituted sickness benefits, to defendant LATHON's bank account.

   f. Defendant LATHON directed the sickness benefits to personal bank accounts that she controlled.

   g. In connection with this scheme to defraud, defendant LATHON obtained approximately $63,047.39 in fraudulent sickness benefit payments from RRB.

C. <u>USE OF THE WIRES</u>

  12. On or about August 21, 2019, in Riverside County, within the Central District of California, and elsewhere, defendant LATHON and others known and unknown to the United States Attorney, for the purpose of executing the above-described scheme to defraud, transmitted and caused the transmission by means of wire communication in interstate commerce, namely, $675.67 of sickness benefit funds, from the United States Treasury in Salt Lake City, Utah to a prepaid Visa RushCard account administered by Green Dot Corporation ending in 8830 in Los Angeles, California.

11

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.  Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of any of the offenses set forth in this Information.

2.  Any defendant so convicted shall forfeit to the United States of America the following:

   (a)  All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense; and

   (b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

E. MARTIN ESTRADA
United States Attorney

*[signature]*

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

SEAN D. PETERSON
Assistant United States Attorney
Chief, Riverside Branch Office

BYRON R. TUYAY
Assistant United States Attorney
Riverside Branch Office