1  STEPHANIE S. CHRISTENSEN
   Acting United States Attorney
2  SCOTT M. GARRINGER
   Assistant United States Attorney
3  Chief, Criminal Division
   BYRON R. TUYAY (Cal. Bar No. 308049)
4  Assistant United States Attorney
   Riverside Branch Office
5       United States Attorney's Office
        3403 Tenth Street, Suite 200
6       Riverside, California 92501
        Telephone: (951) 276-6230
7       Facsimile: (951) 276-6202
        E-mail:    Byron.Tuyay@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

```
F I L E D
CLERK, U.S. DISTRICT COURT

9/30/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DTA _____ DEPUTY
```

10                  UNITED STATES DISTRICT COURT

11              FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,          No. 5:22-cr-00229-FMO

13            Plaintiff,               PLEA AGREEMENT FOR DEFENDANT
                                       LIZETTE BERRIOS LATHON
14                  v.

15  LIZETTE BERRIOS LATHON,

16            Defendant.

17

18       1.    This constitutes the plea agreement between Lizette Berrios

19  Lathon ("defendant") and the United States Attorney's Office for the

20  Central District of California (the "USAO") in the investigation of

21  fraudulent Unemployment Insurance ("UI") benefits claims filed with

22  the California Employment Development Department ("EDD") from in or

23  about February 2020 through March 23, 2021, and fraudulent claims for

24  Railroad Retirement Board ("RRB") sickness benefits submitted between

25  in or around September 2014 and January 2020.  This agreement is

26  limited to the USAO and cannot bind any other federal, state, local,

27  or foreign prosecuting, enforcement, administrative, or regulatory

28  authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

2.   Defendant agrees to:

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts 1, 2, and 3 of the information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349, aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), and wire fraud in violation of 18 U.S.C. § 1343.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

3.   Defendant further agrees:

a.   To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived

from or acquired as a result of the illegal activity to which defendant is pleading guilty, specifically including, but not limited to, the approximately $73,890 in U.S. Currency seized on or about March 23, 2021, which defendant agrees constitutes traceable proceeds of the 18 U.S.C. § 1349 violation (count one) for which defendant is entering a plea of guilty and renders the Forfeitable Property subject to forfeiture pursuant to 18 U.S.C. § 981, 18 U.S.C. § 982, 21 U.S.C. § 2461(c), or otherwise.

b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Property and to the forfeiture of the Forfeitable Property.

c.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Property, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Property on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right she may have to seek remission or mitigation of the forfeiture of the Forfeitable Property.  Defendant further waives any and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

e.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

f.   Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

g.   To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h.   To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

i.   That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

<u>THE USAO'S OBLIGATIONS</u>

4.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.   Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of 18 U.S.C. § 922(g)(1), that is, being a felon in possession of firearms and ammunition, arising out of the firearms and ammunition recovered during the execution of a search warrant at defendant's

residence on March 23, 2021.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.  Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

e.  Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 24 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

<u>NATURE OF THE OFFENSES</u>

5.  Defendant understands that for defendant to be guilty of the crime charged in count one, that is, conspiracy, in violation of 18 U.S.C. § 1349, the following must be true: (1) beginning no later than on or about February 2, 2020 and continuing through at least on or about March 23, 2021, there was an agreement between two or more persons to commit mail fraud and wire fraud; (2) defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

6.    Defendant understands that for defendant to be guilty of the crime charged in count two, that is, aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), the following must be true: (1) defendant knowingly possessed or used without legal authority a means of identification of another person; (2) defendant knew that the means of identification belonged to a real person; and (3) defendant did so during and in relation to a conspiracy to commit mail fraud and wire fraud as charged in count one of the Information.

7.    Defendant understands that for defendant to be guilty of the crime charged in count three, that is, wire fraud, in violation of 18 U.S.C. § 1343, the following must be true: (1) defendant knowingly participated in a scheme or plan to obtain railroad sickness benefits by means of false or fraudulent pretenses, representations or promises; (2) the statements made or facts omitted as part of the scheme were material, that is, they had a natural tendency to influence or were capable of influencing, a person to part with money or property; (3) defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) defendant used, or caused to be used, an interstate or foreign wire communication to carry out an essential part of the scheme.

<u>PENALTIES AND RESTITUTION</u>

8.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1349, as charged in count one of the Information is: 20 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1028A(a)(1), as charged in count two of the Information is: two years' imprisonment; a one-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1343, as charged in count three of the Information is: 20 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11.    Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 42 years' imprisonment; a 3-year period of supervised release; a fine of $750,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $300.

12.    Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of Title 18, United States Code, Section 1028A(a)(1), as charged in count two of the Information, is a two-year term of imprisonment, which must run consecutive to any other sentence of imprisonment, and a mandatory special assessment of $100.

13.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that

if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

14.  Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those charge.  The parties currently believe that the applicable amounts of restitution are approximately $998,630, to be paid to victim California Employment Development Department and approximately $63,047.39, to be paid to victim Railroad Retirement Board, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

15.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic

rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that she is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

16.  Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including her attorney or the Court, can predict to an absolute certainty the effect of her convictions on her immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her pleas may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

17.   Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided in Exhibit B attached hereto and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 19 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING FACTORS

18.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and up to the maximum set by statute for the crimes of conviction.

19.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss greater than $550,000 but less than $1,500,000 | +14 | U.S.S.G. § 2B1.1(b)(1)(H) |

10

| | |
|---|---|
| More than 10 victims: | +2 | U.S.S.G. § 2B1.1(b)(2)(A) |
| Abuse of position of trust | +2 | U.S.S.G. § 3B1.3 |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  Defendant understands that the Court must sentence defendant to a term of two years imprisonment on count two, which must run consecutive to any term of imprisonment imposed for count one.

20.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

21.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

22.  Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.    The right to persist in a plea of not guilty.

      b.    The right to a speedy and public trial by jury.

      c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

      d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

### WAIVER OF APPEAL OF CONVICTION

23.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

### LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

24.   Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 102 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the

statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $1,061,667.39; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

25. The USAO agrees that, provided (a) all portions of the sentence are at or above the statutory minimum and at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 87 months, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: (a) the amount of restitution ordered if that amount is less than $1,061,667.39.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEAS</u>

26. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing

commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

27.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

28.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

29.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

30.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

31.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information

to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 18 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

32.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be between the statutory mandatory minimum and the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

33.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional

16

1   promise, understanding, or agreement may be entered into unless in a

2   writing signed by all parties or on the record in court.

3                  PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

4        34.  The parties agree that this agreement will be considered

5   part of the record of defendant's guilty plea hearing as if the

6   entire agreement had been read into the record of the proceeding.

7   AGREED AND ACCEPTED

8   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
9   CALIFORNIA

10  STEPHANIE S. CHRISTENSEN
    Acting United States Attorney

11

12  *B R Tuyay*                                       9/01/2022
    _____                    _____
13  BYRON R. TUYAY                               Date
    Assistant United States Attorney
14  Riverside Branch Office
    *Lathon*                                          8/30/2022
15  _____                    _____
    LIZETTE BERRIOS LATHON                       Date
16  Defendant
        /s/Gretchen Gaspari                          8/31/2022
17  _____                    _____
    GRETCHEN GASPARI                             Date
18  Attorney for Defendant
    LIZETTE BERRIOS LATHON

19

20

21

22

23

24

25

26

27

28

                                    17

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____           8/30/2022
LIZETTE BERRIOS LATHON              Date
Defendant

18

1

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

2     I am Lizette Berrios Lathon's attorney.  I have carefully and

3 thoroughly discussed every part of this agreement with my client.

4 Further, I have fully advised my client of her rights, of possible

5 pretrial motions that might be filed, of possible defenses that might

6 be asserted either prior to or at trial, of the sentencing factors

7 set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8 provisions, and of the consequences of entering into this agreement.

9 To my knowledge: no promises, inducements, or representations of any

10 kind have been made to my client other than those contained in this

11 agreement; no one has threatened or forced my client in any way to

12 enter into this agreement; my client's decision to enter into this

13 agreement is an informed and voluntary one; and the factual basis set

14 forth in this agreement is sufficient to support my client's entry of

15 guilty pleas pursuant to this agreement.

16

17 <u>     /s/ per e-mail authorization     </u>     <u>    9/26/2022    </u>

GRETCHEN GASPARI                                Date

Attorney for Defendant

18 LIZETTE BERRIOS LATHON

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,            ED CR No. 22-

12          Plaintiff,                   I N F O R M A T I O N

13          v.                           [18 U.S.C. § 1349: Conspiracy to
                                         Commit Mail and Wire Fraud; 18
14  LIZETTE BERRIOS LATHON               U.S.C. § 1343: Wire Fraud; 18
                                         U.S.C. § 1028A(a)(1): Aggravated
15          Defendant.                   Identity Theft; 18 U.S.C.
                                         § 981(a)(1)(C) and 28 U.S.C.
16                                       § 2461(c): Criminal Forfeiture]

17

18

19       The Acting United States Attorney charges:

20                            COUNT ONE

21                       [18 U.S.C. § 1349]

22  A.   INTRODUCTORY ALLEGATIONS

23       At times relevant to this Information:

24       1.   Defendant LIZETTE BERRIOS LATHON was a resident of Moreno

25  Valley, California.

26       2.   Beginning no later than 2014, and continuing to the

27  present, defendant LATHON operated at least three businesses involved

28  in providing tax preparation services to the public: Miracle Tax

Services, Hardcore Corporation (doing business as "Hardcore Taxes"), and Lathon LLC (doing business as "LL Taxes").  Individuals seeking tax preparation services from defendant LATHON provided her with their personal identifying information ("PII"), including their names, dates of birth, and social security numbers.

3.    California's Employment Development Department ("EDD") was the administrator of the unemployment insurance ("UI") benefit program for the State of California.

4.    On March 13, 2020, the President of the United States declared COVID-19 an emergency under the Robert T. Stafford Disaster Relief and Emergency Assistance Act.  As a result, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which the President signed into law on March 27, 2020.  The CARES Act provided over $2 trillion in economic relief protections to the American people from the public health and economic impacts of COVID-19.

5.    Prior to the enactment of the CARES Act, to be eligible for UI administered by EDD, a person had to have been employed and worked in California and received at least a certain amount of wages from an employer in the 18 months preceding his/her UI benefits claim. Because of this requirement, self-employed workers, independent contractors, and employees with insufficient earnings were not eligible to receive regular UI benefits.

6.    The CARES Act established a new program – Pandemic Unemployment Assistance ("PUA") -- to provide unemployment benefits during the COVID-19 pandemic to people who did not qualify for regular unemployment insurance benefits, including business owners, self-employed workers, independent contractors, and those with

limited work history who were out of business or had significantly reduced their services as a direct result of the pandemic.  UI benefits provided under the PUA program were sometimes referred to as PUA benefits.

7.    Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker could qualify for PUA benefits administered by EDD if he/she previously performed such work in California and was unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19-related reason.

8.    Persons applying for PUA benefits did not need to submit any supporting documents to EDD with their applications.  Claimants entered their total income for the 2019 calendar year on the application.  The stated income was used to pay the minimum benefits of $167 per week.  EDD could request documentation to provide proof of the stated income.

9.    A PUA claimant was required to answer various questions to establish his/her eligibility for PUA benefits.  The claimant was required to provide his/her name, social security number, and mailing address.  The claimant was also required to identify a qualifying occupational status and COVID-19 related reason for being out of work.

10.    After it accepted a UI claim, including a claim submitted pursuant to the PUA program, EDD typically deposited UI funds every two weeks to an Electronic Benefit Payment ("EBP") debit card administered by Bank of America ("BofA"), which the claimant could use to pay for his/her expenses.  The EBP debit card was mailed via

1  the United States Postal Service to the claimant at the address the

2  claimant provided in his/her UI application.

3  B.   THE OBJECTS OF THE CONSPIRACY

4       Beginning no later than on or about February 2, 2020, and

5  continuing through at least on or about March 23, 2021, in Riverside

6  County within the Central District of California, and elsewhere,

7  defendant LATHON and her spouse, Co-conspirator 1, together with

8  others known and unknown to the Acting United States Attorney,

9  knowingly and with intent to defraud, conspired to commit offenses

10  against the United States, namely, mail fraud, in violation of Title

11  18, United States Code, Section 1341, and wire fraud, in violation of

12  Title 18, United States Code, Section 1343.

13  C.   THE MANNER AND MEANS OF THE CONSPIRACY

14       11.  The objects of the conspiracy were carried out, and were to

15  be carried out, in substance, as follows:

16           a.   Defendant LATHON filed and caused the filing with EDD

17  of fraudulent applications for UI benefits that falsely asserted the

18  named claimants were self-employed independent contractors who had

19  been negatively affected by the COVID-19 pandemic, thereby triggering

20  eligibility for UI benefits under the PUA provision of the CARES Act.

21  In some instances, defendant LATHON submitted fraudulent applications

22  for UI benefits using names, social security numbers and dates of

23  birth that she obtained from former clients of her tax preparation

24  businesses without the permission of those former clients.  Defendant

25  LATHON also for filing UI applications using third parties' names,

26  dates of birth, and social security numbers.  In all instances,

27  defendant LATHON submitted the applications using others' PII

28  intending to secure the benefits for herself and her family by having

the EBP debit cards mailed to addresses she and her family, including Co-conspirator 1, controlled.

b. In some instances, defendant LATHON falsely asserted and caused to be asserted on the UI applications submitted in furtherance of the conspiracy that the claimants were residents of California entitled to UI benefits administered by EDD when, in fact, they were not, and defendant LATHON knew they were not.

c. In some instances, defendant LATHON falsely asserted and caused to be asserted inflated income for the named claimants on their applications in order to receive the maximum benefit amount.

d. In some instances, defendant LATHON made up and caused to be made up the occupation that was listed for the named claimant on the application.

e. To the contrary, and as defendant LATHON then well knew, many of the persons named as claimants on the applications that defendant LATHON filed and caused to be filed had no residential history in the State of California and/or had not been employed in the occupations that defendant LATHON reported and caused to be reported on the UI benefits applications she submitted and caused to be submitted in the names of the named claimants.

f. By falsely asserting that the claimants had worked in the State of California as independent contractors who had lost work because of COVID-19, defendant LATHON falsely represented and caused to be falsely represented that the named claimants were entitled to UI benefits administered by EDD when, as defendant LATHON then knew, they were not.

g. As a result of the fraudulent UI benefit claims that defendant LATHON filed and caused to be filed, EDD authorized BofA to

issue EBP debit cards in the names of the named claimants.  Defendant LATHON knew that the applications she submitted would cause BofA to mail EBP debit cards issued to the named claimants via the United States Postal Service to the addresses defendant LATHON provided on the fraudulent UI claim applications, including addresses that defendant LATHON and her co-conspirators controlled.

h.    Defendant LATHON and Co-conspirator 1 would use the EBP debit cards, or direct others to use the EBP debit cards, to make cash withdrawals at automated teller machines ("ATMs") and to make purchases at retail stores, both types of transactions involved wire communication in interstate commerce.

i.    Through this conspiracy, defendant LATHON and Co-conspirator 1 caused at least 44 fraudulent PUA claims to be filed, resulting in losses to EDD and the United States Treasury of approximately $998,630.

D.    OVERT ACTS

12.    In furtherance of the conspiracy and to accomplish its objects, defendant LATHON and Co-conspirator 1, and other co-conspirators known and unknown to the Acting United States Attorney, committed, and willfully caused others to commit, various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1:    On June 29, 2020, defendant LATHON used the EBP debit card held in victim M.C.'s name to withdraw $1,000 from an ATM in Moreno, California.

Overt Act No. 2:    On August 31, 2020, defendant LATHON used the EBP debit card held in victim O.O.'s name to withdraw $1,000 from an ATM in Moreno Valley, California.

<u>Overt Act No. 3:</u>   On September 7, 2020, defendant LATHON and Co-conspirator 1 used the EBP debit cards held in the names of victims L.L. and D.P. to withdraw $2,000 from an ATM in Upland, California.

<u>Overt Act No. 4:</u>   On March 23, 2021, defendant LATHON possessed handwritten notes containing victim A.F.'s name, date of birth, and social security number, and an e-mail address containing A.F.'s name.

COUNT TWO

[18 U.S.C. § 1028A(a)(1)]

On or about August 5, 2020, in Riverside County, within the Central District of California, defendant LIZETTE BERRIOS LATHON knowingly possessed and used, without lawful authority, means of identification that defendant LATHON knew belonged to another person, namely, the name and social security number of victim M.Q., during and in relation to the offense of Conspiracy to Commit Mail Fraud and Wire Fraud, a felony in violation of Title 18, United States Code, Section 1349, as charged in Count One of this Information.

COUNT THREE

[18 U.S.C. § 1341]

A.   INTRODUCTORY ALLEGATIONS

1.   At all times relevant to this Information, defendant LIZETTE BERRIOS LATHON was a resident of Riverside County, California, within the Central District of California.

2.   Defendant LATHON was employed as a Service/Train Attendant for the National Railroad Passenger Corporation, also known as Amtrak, from 2000 to 2021.

3.   Defendant LATHON controlled a prepaid Visa RushCard administered by Green Dot Corporation ending in 8801.

4.   The Railroad Retirement Board ("RRB") is an independent federal agency that administers comprehensive disability, retirement-survivor, and unemployment-sickness insurance benefits programs for United States' railroad workers and their families.

5.   As an employee of a covered railroad, defendant LATHON was eligible for benefits from RRB.

6.   To receive sickness benefits, employees must complete and file a Form SI-1a Application for Sickness Benefits within 10 days from the first day benefits are claimed.

7.   Employees must also submit a Form SI-1b Statement of Sickness, completed by a licensed physician, describing the sickness and including a return-to-work date for the employee.

8.   To continue to receive sickness benefits after a 14-day claim period, employees must submit a form SI-3 Claim for Sickness Benefits every two weeks.  The SI-3 Claim for Sickness Benefits can be submitted online on RRB's website.

9.    Employees are also required to submit a Form SI-7 Supplemental Doctor's Statement updating RRB on the employee's condition and providing information on when the employee can return to work.  The SI-7 Supplemental Doctor's Statements are required to continue receiving benefit payments.  A physician completes the Form 2I-7 Supplemental Doctor's Statement, which is used to determine if employee is still eligible to receive the sickness benefits due to persisting health condition.

B.    THE SCHEME TO DEFRAUD

10.    Beginning no later than September 17, 2014, and continuing until January 6, 2020, in Riverside County, within the Central District of California, and elsewhere, defendant LATHON knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the RRB by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

11.    The fraudulent scheme operated, in substance, in the following manner:

a.    Defendant LATHON would visit a medical professional, complaining of pain or anxiety.

b.    Defendant LATHON would obtain documentation from the medical professional, or that person's office relating to her initial visit.

c.    Defendant LATHON would submit a Form SI-1a Application for Sickness Benefits relating to her initial visit to the medical professional.

d.    Defendant LATHON would obtain and file forged and materially false forms SI-3 Claim for Sickness Benefits and false

10

forms SI-7 Supplement Doctor's Statement, falsely representing that she had been seen by a medical professional, falsely representing that the medical professional had signed the forms, and falsely representing that the medical professional had provided a new return to work date for defendant LATHON, thereby extending the period of time she would receive RRB sickness benefits.

e.   As a result of defendant LATHON's misrepresentations, RRB, through the United States Treasury, made electronic transfers of funds, which constituted sickness benefits, to defendant LATHON's bank account.

f.   Defendant LATHON directed the sickness benefits to personal bank accounts that she controlled.

g.   In connection with this scheme to defraud, defendant LATHON obtained approximately $63,047.39 in fraudulent sickness benefit payments from RRB.

C.   <u>USE OF THE WIRES</u>

12.   On or about August 21, 2019, in Riverside County, within the Central District of California, and elsewhere, defendant LATHON and others known and unknown to the Acting United States Attorney, for the purpose of executing the above-described scheme to defraud, transmitted and caused the transmission by means of wire communication in interstate commerce, namely, $675.67 of sickness benefit funds, from the United States Treasury in Salt Lake City, Utah to a prepaid Visa RushCard account administered by Green Dot Corporation ending in 8830 in Los Angeles, California.

1

2

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

3      1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal
4  Procedure, notice is hereby given that the United States of America
5  will seek forfeiture as part of any sentence, pursuant to Title 18,
6  United States Code, Section 981(a)(1)(C) and Title 28, United States
7  Code, Section 2461(c), in the event of any defendant's conviction of
8  any of the offenses set forth in this Information.

9      2.   Any defendant so convicted shall forfeit to the United
10  States of America the following:

11         (a)   All right, title, and interest in any and all
12  property, real or personal, constituting, or derived from, any
13  proceeds traceable to the offense; and

14         (b)   To the extent such property is not available for
15  forfeiture, a sum of money equal to the total value of the property
16  described in subparagraph (a).

17      3.   Pursuant to Title 21, United States Code, Section 853(p),
18  as incorporated by Title 28, United States Code, Section 2461(c), any
19  defendant so convicted shall forfeit substitute property, up to the
20  value of the property described in the preceding paragraph if, as the
21  result of any act or omission of said defendant, the property
22  described in the preceding paragraph or any portion thereof (a)
23  cannot be located upon the exercise of due diligence; (b) has been
24  transferred, sold to, or deposited with a third party; (c) has been
25  placed beyond the jurisdiction of the court; (d) has been

26  //

27  //

28

1  substantially diminished in value; or (e) has been commingled with

2  other property that cannot be divided without difficulty.

3                                    STEPHANIE S. CHRISTENSEN
                                     Acting United States Attorney
4

5

6                                    SCOTT M. GARRINGER
                                     Assistant United States Attorney
7                                    Chief, Criminal Division

8                                    SEAN D. PETERSON
                                     Assistant United States Attorney
9                                    Chief, Riverside Branch Office

10                                   BYRON R. TUYAY
                                     Assistant United States Attorney
11                                   Riverside Branch Office

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **EXHIBIT B**

### **STATEMENT OF FACTS IN SUPPORT OF PLEA AGREEMENT**

Lizette Berrios Lathon ("defendant") represents and admits that the following facts are true:

**Background on Unemployment Insurance Program**

At all times relevant to the charge in the Information:

Defendant was a resident of Moreno Valley, California.

Beginning no later than 2014 to the present defendant operated at least three businesses involved with providing tax preparation services to the public: Miracle Tax Services, Hardcore Corporation (doing business as "Hardcore Taxes"), and Lathon LLC (doing business as "LL Taxes").  Individuals seeking tax preparation services from defendant's businesses provided her with their personal identifying information ("PII") including their names, dates of birth, and social security numbers.

California's Employment Development Department ("EDD") was the administrator of the unemployment insurance ("UI") benefit program for the State of California.

On March 13, 2020, the President of the United States declared COVID-19 an emergency under the Robert T. Stafford Disaster Relief and Emergency Assistance Act.  As a result, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which the President signed into law on March 27, 2020.  The CARES Act provided over $2 trillion in economic relief protections to the American people from the public health and economic impacts of COVID-19.

Before the enactment of the CARES Act, to be eligible for UI administered by EDD, a person had to have been employed and worked in California and received at least a certain amount of wages from an employer in the 18 months preceding his/her UI benefits claim.  Because of this requirement, self-employed workers, independent contractors, and employees with insufficient earnings were not eligible to receive regular UI benefits.

The CARES Act established a new program – Pandemic Unemployment Assistance ("PUA") –- to provide unemployment benefits during the COVID-19 pandemic to people who did not qualify for regular unemployment insurance benefits, including business owners, self-employed workers, independent contractors, and those with limited work history who were out of business or had significantly reduced their services as a direct result of the pandemic.  UI benefits provided under the PUA program were sometimes referred to as PUA benefits.

Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker could qualify for PUA benefits administered by EDD if he/she previously performed such work in California and was unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19-related reason.

Persons applying for PUA benefits did not need to submit any supporting documents to EDD with their applications. Claimants entered their total income for the 2019 calendar year on the application.  The stated income was used to pay the

minimum benefits of $167 per week.  EDD could request documentation to provide proof of the stated income.

A PUA claimant was required to answer various questions to establish his/her eligibility for PUA benefits.  The claimant was required to provide his/her name, Social Security Number, and mailing address.  The claimant was also required to identify a qualifying occupational status and COVID-19 related reason for being out of work.

After it accepted a UI claim, including a claim submitted pursuant to the PUA program, EDD typically deposited UI funds every two weeks to an Electronic Benefit Payment ("EBP") debit card administered by Bank of America ("BofA"), which the claimant could use to pay for his/her expenses.  The EBP debit card was mailed via the United States Postal Service to the claimant at the address the claimant provided in his/her UI application.

**<u>Defendant's Conspiracy to Defraud EDD</u>**

Beginning no later than February 2, 2020, and continuing through at least March 23, 2021, in Riverside County within the Central District of California, and elsewhere, defendant had an agreement with her spouse, Co-conspirator 1, and others, to knowingly and with the intent to defraud, commit wire and mail fraud in violation of 18 U.S.C. §§ 1341, 1343, against the United States.  Specifically, defendant and her co-conspirators devised, participated in, and executed a scheme to fraudulently obtain UI benefits, including PUA benefits from EDD and the United States Treasury by submitting applications for UI

3

benefits using the names, dates of birth and social security numbers of third parties and fictitious employment information.

Defendant filed and caused the filing with EDD of at least 44 fraudulent applications for UI benefits, which falsely asserted the named claimants were self-employed independent contractors who were negatively affected by the COVID-19 pandemic, triggering eligibility for UI benefits under the PUA provision of the CARES Act.  Defendant obtained some of the PII she used to submit the fraudulent claims through her prior work as a tax preparer.  In all instances, defendant LATHON submitted the applications using others' PII intending to secure the benefits for herself, her family, and others, by having the EBP debit cards mailed to addresses that she and Co-conspirator 1, controlled.

In some instances, defendant falsely asserted and caused to be asserted on the UI applications submitted in furtherance of the conspiracy that the claimants were residents of California entitled to UI benefits administered by EDD when, in fact, they were not, and defendant knew they were not.  In some instances, defendant falsely asserted and caused to be asserted inflated income for the named claimants on their applications in order to receive the maximum benefit amount.  In some instances, defendant made up and caused to be made up the occupation that was listed for the named claimant on the application.

To the contrary, and as defendant then well knew, many of the persons named as claimants on the applications defendant

4

filed and caused to be filed had no residential history in the State of California and/or had not been employed in the occupations that defendant reported and caused to be reported on the UI benefits applications she submitted and caused to be submitted in the names of the named claimants.  By falsely asserting that the claimants had worked in the State of California as independent contractors who had lost work because of COVID-19, defendant falsely represented that the named claimants were entitled to UI benefits administered by EDD when, as defendant then knew, they were not.

As a result of the fraudulent UI benefit claims that defendant filed and caused to be filed, EDD authorized BofA to issue EBP cards in the names of the named claimants.  Defendant knew that the applications she submitted would cause BofA to mail EBP debit cards issued to the named claimants via the United States Postal Service to the addresses defendant provided on the fraudulent UI claim applications, including addresses that defendant and her co-conspirators controlled.

Defendant and her co-conspirators would use the EBP debit cards for personal expenses.  Defendant directed others to use the EBP debit cards to make cash withdrawals at automated teller machines ("ATMs") and to make purchases at retail stores, both types of transactions involved wire communication in interstate commerce.

Through this conspiracy, defendant and her co-conspirators caused at least 44 fraudulent PUA claims to be filed resulting in losses to EDD and the United States Treasury of approximately

5

$998,630.

In furtherance of the conspiracy and to accomplish its objects and goals, defendant and co-conspirators committed, and willfully caused others to commit, various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

On June 29, 2020, defendant used an EBP debit card held in victim M.C.'s name to withdraw $1,000 from an ATM in Moreno Valley, California.

On August 31, 2020, defendant used the EBP debit card held in victim O.O.'s name to withdraw $1,000 from an ATM in Moreno Valley, California.

On September 7, 2020, defendant and Co-conspirator 1 used the EBP debit cards held in the names of victims L.L. and D.P. to withdraw $2,000 from an ATM in Upland, California.

On March 23, 2021, defendant possessed handwritten notes containing victim A.F.'s name, date of birth, and social security number, and an e-mail address containing A.F.'s name.

Furthermore, on or about August 5, 2020, in Riverside County, within the Central District of California, defendant knowingly possessed and used, without lawful authority, means of identification that defendant knew belonged to another person, namely, the name and social security number of victim M.Q., during and in relation to the scheme to defraud EDD.  At the time defendant used the name and social security number of victim M.Q. to defraud EDD, defendant knew that M.Q. was a real person.

### <u>Defendant's Railroad Retirement Sickness Benefits Fraud Scheme</u>

Defendant was employed as a Service/Train Attendant for the National Railroad Passenger Corporation, also known as Amtrak, from 2000 to 2021.

Defendant controlled a prepaid Visa RushCard administered by Green Dot Corporation ending in 8830.

The Railroad Retirement Board ("RRB") is an independent federal agency that administers comprehensive disability, retirement-survivor, and unemployment-sickness insurance benefits programs for United States' railroad workers and their families.

As an employee of a covered railroad, defendant was eligible for benefits from RRB.  To receive sickness benefits, employees must complete and file Form SI-1a Application for Sickness Benefits within 10 days from the first day benefits are claimed.  Employees must also submit a Form SI-1b Statement of Sickness, completed by a licensed physician, describing the sickness and including a return-to-work date for the employee.

To continue to receive sickness benefits after a 14-day claim period, employees must submit a form SI-3 Claim for Sickness Benefits every two weeks.  The SI-3 Claim for Sickness Benefits can be submitted online on RRB's website.

Employees are also required to submit a Form SI-7 Supplemental Doctor's Statement updating RRB on the employee's condition and providing information on when the employee can return to work.  The SI-7 Supplemental Doctor's Statements are

required to continue receiving benefit payments.  A physician completes the Form 2I-7 Supplemental Doctor's Statement, which is used to determine if employee is still eligible to receive the sickness benefits due to persisting health condition.

Beginning no later than September 17, 2014, and continuing until January 6, 2020, in Riverside County, within the Central District of California, and elsewhere, defendant knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the RRB by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

As part of the scheme, defendant visited medical professionals, complaining of health issues including pain or anxiety.  Defendant then obtained documentation from the medical professional, or that person's office relating to her initial visit.  Defendant submitted Form SI-1a Applications for Sickness Benefits every year from 2015 through 2019, relating to her initial visits with various medical professionals.  Each form represented that defendant suffered from health problems that prevented her return to work, even though, as defendant then knew, defendant did not suffer from the medical conditions forming the basis for her sickness benefits claims.

Defendant filed materially false forms SI-3 Claim for Sickness Benefits and false forms SI-7 Supplemental Doctor's Statement, falsely representing that she had been seen by a medical professional, falsely representing that the medical professional had signed the forms, and falsely representing that

8

the medical professional had provided a new return-to-work date for defendant, thereby greatly extending the period of time she would receive RRB sickness benefits.  Defendant submitted these forms with the intent to defraud RRB of sickness benefits. Defendant knew the forms were false because she forged the physicians' signatures on the forms and because she did not suffer from the health conditions represented on the forms.

As a result of defendant's misrepresentations, RRB, through the United States Treasury, made electronic transfers of funds, which constituted sickness benefits, to defendant's bank account.  At defendant's direction, the sickness benefits were deposited into personal bank accounts that she controlled.  In connection with this scheme to defraud, between September 2014 and January 2020 defendant obtained approximately $63,047.39 in fraudulent sickness benefit payments from RRB.

On or about August 21, 2019, in Riverside County, within the Central District of California, for the purpose of executing the above-described scheme to defraud RRB, defendant caused the transmission by means of wire communication in interstate commerce, namely, $675.67 of sickness benefit funds, from the United States Treasury in Salt Lake City, Utah to a prepaid Visa RushCard account administered by Green Dot Corporation ending in 8830 in Los Angeles, California.

I have read this STATEMENT OF FACTS IN SUPPORT OF PLEA AGREEMENT in its entirety.  I have had enough time to review this statement of facts and I have carefully and thoroughly discussed every part of it with my attorney.  I agree that this statement of facts is sufficient to support pleas of guilty to the charges described in the plea agreement and to establish the Sentencing Guidelines factors set forth in paragraph 18 of the plea agreement.

_____          8/30/2022
LIZETTE BERRIOS LATHON                    Date
Defendant


I am LIZETTE BERRIOS LATHON's attorney.  I have carefully and thoroughly discussed every part of this statement of facts with my client and agree that it is sufficient to support pleas of guilty to the charges described in the plea agreement and to establish the Sentencing Guidelines factors set forth in paragraph 18 of the plea agreement.

/s/Gretchen Gaspari                        8/31/2022
_____
GRETCHEN GASPARI, ESQ.                     Date
Attorney for Defendant
LIZETTE BERRIOS LATHON

## <u>CERTIFICATE OF SERVICE</u>

I am a citizen of the United States and a resident of Riverside County, California.  I am over 18 years of age, and I am not a party to the above-entitled action.  My business address is the United States Attorney's Office, 3403 Tenth Street, Suite 200, Riverside, California 92501.

On this date, <u>September 30, 2022</u> I served a copy of the following entitled document(s) <u>PLEA AGREEMENT</u>

as follows:

☐    by placing the document in a sealed envelope, addressed to the person specified below, and placing it for interoffice delivery within the courthouse:

■    by e-mailing a pdf. version of the document to the e-mail address specified below:

☐    by placing the document in a sealed envelope, addressed to the person specified below, and placing it for U.S. mail delivery:

**Gretchen Gaspari**
gretchen@dre.law

_____

I declare under penalty of perjury that the foregoing is true and correct.  Executed on, September 30, 2022 at Riverside, California.

/s/_____
Brenda Tovar